Ralph B. CONLEE

v.

BOST ENGINEERING COMPANY, INC., et al.

Court of Appeals of Tennessee, Eastern Section.

June 10, 1976.

Certiorari Denied by Supreme Court Sept. 7, 1976.

William W. Davis, Knoxville, for appellants.

Robert A. Finley and Darryl G. Lowe, Knoxville, for appellees.

OPINION

SANDERS, Judge.

The Plaintiff-Appellee, Ralph B. Conlee, brought suit in the Chancery Court for Knox County against the Defendants-Appellants, Bost Engineering Company, Inc., his former employer, and A. E. Bost, Charles Buchanan and Estelle Austin, trustees of a private pension plan initiated by Bost Engineering Company, seeking to recover certain funds held by the trustees.

The cause was heard by the Chancellor who found the issues in favor of the Plaintiff. A judgment was entered for the Plaintiff in the amount of $8,670 which represents the cash surrender value of two insurance policies purchased by the trustees for the purpose of funding the Plaintiff's

participation in the pension plan. The Defendants have appealed and assigned error.

The main thrust of the Defendants' assignments of error is that it was error for the Chancellor to rewrite the provisions of the pension plan in accordance with his own ideas of what is fair and equitable, disregarding the clear, unambiguous language of the trust agreement.

On November 15, 1965, Bost Engineering Company entered into a trust agreement for the benefit of its employees. The trust agreement established a non-contributory pension plan for the employees of the Company as a fringe benefit. The obligation of the Company to its employees and the vesting of an employee's right to receive pension benefits under the terms of the trust agreement are as follows:

## ARTICLE IX

## TERMINATION OF EMPLOYMENT

9.1 If a Participant shall for any cause, except retirement as herein contemplated, other than early retirement as permitted by Section 7.2(a), or death, cease to be employed by the Employer, the Terminated Participant shall have no further rights or interest, nor receive any benefits under the Trust except as provided in this Article IX.*

9.2 Such Terminated Participant shall have a vested interest as of the date of such termination of employment in each contract issued and in effect for his benefit according to the following Schedule:

For the first five (5) years of participation . . . . . . . Nothing

Upon completion of five (5) years of participation . . . . . . . 50%

Upon completion of each additional year of participation, an additional . . . . . . . 10%

Upon completion of ten (10) years of participation . . . . . . . 100%

The Plaintiff was employed by Bost Engineering on February 1, 1972, and became a participant in the pension plan on its anniversary date, November 15, 1972. He remained an employee of the Company un-til January, 1974, when it was purchased by Russell and Axon, another engineering concern. The Plaintiff was given the opportunity to accept, and did accept, employment with the new firm and was entitled to participate in its retirement program. The pension trust created by Bost Engineering Company was not continued or consolidated with the pension plan offered by Russell and Axon. After the Plaintiff left the employment of the Company its pension trust continued in existence until the tenth anniversary of the trust, at which time it was terminated.

After the Plaintiff had been in the employ of Bost Engineering Company approximately one year, he approached its president, A. E. Bost, regarding an increase in salary. At this time his salary was $14,000 per year and was less than that paid engineers of a similar status. During the course of this conversation Defendant Bost informed the Plaintiff that $5,000 was being paid into a pension trust fund each year on his behalf. Prior to this conversation the Plaintiff was not aware of the contributions being made to the pension trust for his benefit. Upon receiving this information the Plaintiff withdrew his request for additional compensation and accepted Defendant Bost's offer to increase his wages by $1,000 per year.

The Plaintiff based his right to recover upon this conversation, claiming that the contributions to the pension fund were being made on his behalf. The Chancellor allowed the Plaintiff to recover, stating that because of the aforementioned conversation the payments to the trust fund, although made by the employer, were in effect contributions by the Plaintiff.

■ There is no evidence the Defendant Company or trustees misrepresented any material fact to the Plaintiff regarding the pension trust. Therefore, we must respectfully disagree with the conclusions reached by the Chancellor. Under the plain and unambiguous terms of the pension plan the Plaintiff was not entitled to any benefits since his right to the pension fund had not vested as provided by the conditions prece-

dent to the vesting of such rights set forth in Article IX, Sections 9.1 and 9.2.

■ The issues raised in this appeal constitute a question of first impression in this state; however, there is ample authority to support the proposition that an employee's rights with respect to a pension or retirement plan vest only in accordance with the terms of the plan. The prevailing view regarding the rights and liabilities as between employer and employee with respect to general pension or retirement plans has been stated as follows in 42 A.L.R.2d 461 at 464:

"Whatever the general nature of the employee's rights under a pension plan, it is clear that full compliance with the announced conditions of eligibility is a condition precedent to the acquisition of rights thereunder, and accordingly it has usually been held that where employment terminates before entitlement is complete the employee has no right to any benefits other than those expressly provided for by the terms of the plan.

"Where the pension plan is held to have given rise to legally enforceable rights, it appears that the general principles of contract construction, as applied to the specific provisions of the plan in question, govern the rights of the employee to recovery of his contributions upon termination of his employment, his rights on termination or modification of the pension plan, and the computation of his benefits. "By the terms of private pension plans, the right to benefits is ordinarily conditioned upon the completion of a certain period of service, attainment of a certain age, or a combination of these two factors. And usually it has been held that satisfaction of such conditions is a prerequisite to eligibility under the plan."

■ A court is without authority to adjust the equities of a pension or retirement plan in derogation of the existence of express provisions in such a plan which plainly and unambiguously establish certain criteria for the vesting of employees' right to benefits under the plan. This proposition has been specifically addressed by the Pennsylvania Supreme Court in *Reilly v. Walker Bros.*, 425 Pa. 1, 229 A.2d 457, 462 (1967), where, in reversing a chancellor's holding similar to the case at bar, the court said:

"The Chancellor does not have the authority to rewrite or amend a plan or make changes, in accordance with his own ideas, as to what is fair and equitable."

\* \* \* \* \* \*

"There being no inequity or illegality in the terms of the Pension Agreement, it should be enforced in accordance with its terms and courts have no authority to re-draft the agreement to include people not entitled to benefit, to the detriment of those who are entitled to participate. See *Schneider v. McKesson & Robbins*, 254 F.2d 827 (2 Cir. 1958)."

We find the Chancellor was in error. To hold otherwise would set a dangerous precedent and could result in the emasculation of the terms of a written contract by a casual conversation between an employer and employee.

The Plaintiff has relied on Section 401(a) of the Internal Revenue Code and certain revenue rulings in support of his position. However, we find no correlation between the citations and the issues in the case at bar.

The Chancellor, in his memorandum opinion, found the Plaintiff was required to pay more than $400 in federal income taxes in 1972 and in 1973 because of contributions being made to the trust.

■ The proof does not support this finding. The Plaintiff was required to pay income taxes on $433.48 in 1972 and on $442.19 in 1973. This amount was allocable to the Plaintiff as income since it was the amount paid for life insurance of which Plaintiff's wife was beneficiary.

The Chancellor also stated in his memorandum opinion: "During argument Defendant admitted that Plaintiff would be entitled to the proceeds of the life insurance policy upon his life, had the pension plan been on a contributory basis, that is, had Mr. Conlee contributed to the plan." This

statement seems to have been very persuasive in the Chancellor's reaching his decision in the case.

Defendants, in their brief, do not concede that this statement was made and insist the Chancellor must have misunderstood what counsel said.

■ Argument of counsel is not incorporated in the bill of exceptions and is not before us for consideration. However, such statement, if made, would not be controlling in the case at bar.

The assignments of error are sustained. The decree of the Chancellor is reversed and the complaint is dismissed.

The costs of this appeal are taxed to the Appellee.

ROGER E. THAYER, Special Judge, concurs.

GODDARD, J., dissents.