J. Frank HALL, Plaintiff/Appellant,

v.

SHELBY COUNTY RETIREMENT BOARD, et al., Defendants/Appellees.

Court of Appeals of Tennessee, Western Section, at Jackson.

Dec. 29, 1995.

Application for Permission to Appeal Denied by Supreme Court April 29, 1996.

J. Frank Hall, Jr., Memphis, for Appellant.

J. Minor Tait, Jr., Assistant Shelby County Attorney, Memphis, for Appellees.

HIGHERS, Judge.

The majority of the facts in the present case are undisputed. Petitioner worked for Shelby County as a delinquent tax attorney from May 10, 1977, to February 1, 1987. Petitioner was appointed to this position by the Shelby County Trustee on a year-to-year basis. The Shelby County Trustee did not reappoint Petitioner in January of 1987.

As a result of the Trustee's failure to reappoint him, Petitioner's service with the county fell approximately three months short of ten years, the period of time necessary for his retirement benefits to vest under the terms of the county retirement plan. Following a six-month break in service, Petitioner secured employment as a General Sessions prosecutor from January 1, 1988, to April 30, 1988, in an attempt to complete the 10–year vesting requirement.

Since 1945, the retirement system of Shelby County has had a retirement plan, known as "Plan B." This plan was in effect when Petitioner began his employment with the county in 1977. In 1978, the county commissioners amended the retirement system by creating an additional plan, Plan A. Employees whose rights had previously vested under Plan B were not affected by this amendment. If, however, an employee who was participating in Plan B "terminated employment" with the county before 10 years and later was re-employed with the county, that employee was placed into Plan A.

The pertinent provision of the amendment to Plan B provides:

> Any active employee who is a participant in Plan B as of the effective date shall continue to have future rights to benefits under Plan B for the duration of his continuous future employment thereafter. If any such participant in Plan B terminates employment with Shelby County after the effective date or any retired, disabled or otherwise terminated employee on December 1, 1978 shall be subsequently re-employed by Shelby County, he shall be entitled to all benefits pursuant to Plan B vested and accrued as of such date of termination of employment, but upon such re-employment with Shelby County, shall

become a member of Plan A and shall not resume participation in Plan B in any way.

Pursuant to Plan B, an employee's rights vest when he or she has been employed with the county for ten or more years. The employee is entitled to benefits upon reaching age 60.[1]

On May 4, 1988, Petitioner filed an application with the Board, seeking to determine his status in the retirement system. In his application to the Board, Petitioner asked the Board determine that he had a vested right to benefits pursuant to Plan B. At their meeting, the Board declined to make any decision on the matter, reasoning that it could not render an advisory opinion. In response, Petitioner filed a Petition for Writ of Certiorari in the chancery court. The chancellor remanded the case to the Board with instructions for the Board to determine whether Petitioner's break in service was voluntary or involuntary. Following remand, the Board held a hearing and determined that his break in service was voluntary.

Petitioner subsequently moved the chancery court to remand the question of voluntary or involuntary to the Board with instructions to answer the question based upon evidence and facts, rather than upon law. The chancellor granted said motion and remanded the case to the Board "to decide whether the break in service of Petitioner, J. Frank Hall, was voluntary or involuntary . . ." The chancellor ordered the Board to decide the question as one of fact rather than one of law. The chancellor further instructed the Board to afford to the words "voluntary" and "involuntary" their natural and ordinary meanings.

In accordance with the chancellor's mandate, the Board made a second determination that Petitioner's break in service was voluntary. The final decree of the chancery court upheld the Board's determination. The trial court found that the Board's finding was supported by material and substantial evidence and, therefore, dismissed Petitioner's writ of certiorari.

It is from this dismissal that Petitioner appeals. Petitioner has raised several issues on appeal; however, we perceive the primary issues to be two-fold. First, Petitioner contests the Board's finding that his break in service was voluntary. Second, Petitioner seeks to reverse the trial court's denial of his motion to amend the pleadings so that he can supplement his petition with additional issues.

We first address Petitioner's argument that the trial court erred in denying his motion to amend the petition.

In his original petition for writ of certiorari, Petitioner proceeded under a common law writ. The standard of review for a common law writ is that a trial court should uphold an action of a civil service board unless the board has acted in violation of a constitutional or statutory provision, has acted illegally, fraudulently, or arbitrarily, or has acted without any material evidence to support its decision. *Cochran v. Board of Administration of the City of Memphis*, 1987 WL 14746 (Tenn.App. July 28, 1987); *Brown v. Tennessee Real Estate Commission*, 494 S.W.2d 506, 510 (Tenn.App.1972). In his motion to amend the petition, filed some three and a half years after the original petition was filed, Petitioner sought to have the chancery court review his case on a *de novo* standard of review. He also moved the court to allow him to add allegations against the Board for breach of duty of loyalty and conflict of interest. The trial court denied this motion. Almost a year later, Petitioner filed a second motion to amend the petition to recharacterize the petition as a statutory writ, rather than a common law writ, in order to gain *de novo* review. He further alleged that T.C.A. § 27–9–114, which governs the standard of review on common law writs, was violative of the Equal Protection Clause. The trial court denied this motion, as well.

---

1. Specifically, Plan A provides:
   4.04(b) Non-vested Plan B Member Who Returns to Employment.
   Any member of Plan B who Terminates Employment before or after December 1, 1978, who has less than ten years of creditable service in Plan B, but who returns to Employment within two years after such Termination and has not received a refund of contributions under Plan B, shall automatically become a Participant in Plan A.

■ Tenn.R.Civ.P., Rule 15.01 provides that "[a] party may amend his pleadings once as a matter of course at any time before a responsive pleading is served ... otherwise, a party may amend his pleadings only by written consent of the adverse party or by leave of court ..." In Tennessee, after a responsive pleading has been served, the denial of a motion to amend the pleadings lies within the sound discretion of the trial court. It will not be reversed absent a showing of an abuse of that discretion. *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn.App.1979); *Welch v. Thuan*, 882 S.W.2d 792, 793 (Tenn. App.1994). There are several considerations a trial judge should evaluate in determining whether to grant or deny a motion to amend. Among these factors are undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Merriman*, 599 S.W.2d at 559.

■ Petitioner has failed to persuade this Court that the chancellor abused his discretion in denying his motions to amend. In light of the factors delineated above, we find ample justification for the actions of the trial court in denying such motions. In the present case, Petitioner did not file his motions to amend until approximately three and a half years after his original petition was filed. The motions were thus untimely, thereby constituting an undue delay in filing. Moreover, because Petitioner sought to add several additional claims, a court's allowance of the amendments would unduly prejudice the Board. Finally, the amendments would be futile because granting them would only prolong the litigation and would almost certainly not lead to a contrary ultimate result.

We therefore find that the trial court did not abuse its discretion in denying the motion to amend.

■ Both of the parties and the trial court expended much time and toil grappling with the issue of whether Petitioner's break in service was voluntary or involuntary. The Board's position is that it is immaterial whether Petitioner's cessation of work was voluntary or involuntary under the retirement plan. According to the Board, all employees who leave county service and are later re-employed by the county are placed into Plan A, regardless of the circumstances under which they left employment. The Board argues that the same result ensues whether the employee retires, was discharged, or was disabled.

■ In contrast, Petitioner's position is that a line of federal decisions under ERISA and the Labor Management Relations Act should govern this case. These cases hold that the failure to have a voluntary-involuntary test with respect to breaks in service is arbitrary and capricious. *See, e.g., Lee v. Nesbitt*, 453 F.2d 1309 (9th Cir.1971) (holding that the LMRA implicitly requires a voluntary-involuntary test in evaluating pension benefits); *Van Fossan v. International Brotherhood of Teamsters Union Local No. 710 Pension Fund*, 649 F.2d 1243 (7th Cir. 1981) (holding that ERISA requires a voluntary-involuntary test for breaks in service). He urges this Court to adopt the rules and reasoning of these decisions and apply them to government pension plans in Tennessee.

We find Petitioner's argument to be flawed in several respects. Primarily, the decisions upon which he relies are not binding on this Court. The most distinguishable facet of these cases, however, is that each ultimately dealt with the construction, interpretation, and application of federal statutes rather than the simple interpretation of pension plans.

There exists no Tennessee law indicating that a voluntary-involuntary test should be applied as a matter of law to breaks in service under government pension plans.[2] We therefore decline to adopt the federal break in service rules with respect to government pension plans in Tennessee.

Accordingly, we must look to the language of the plan itself to determine whether there exists a voluntary-involuntary distinction that might affect Petitioner's entitlement to benefits.

**2.** ERISA explicitly exempts government pension plans from its coverage. 29 U.S.C.S. § 1003.

■ We begin with the fundamental proposition that an employee's rights in a retirement plan "vest only in accordance with the terms of the plan." *Conlee v. Bost Engineering Co.*, 541 S.W.2d 601, 603 (Tenn.App. 1976).

The pertinent portions of the retirement plan that we find determinative include section 9(d) of Plan B, which states, "Any **member terminating** with ten (10) or more years of creditable service shall have ... a deferred pension commencing at age sixty (60) ...." Plan A states that "[a]ny **member** of Plan B **who Terminates Employment**" with the county who has less than ten years of service and who returns to employment with the county within two years "shall automatically become a participant in Plan A." [3] (emphasis added)

The pivotal words in the quoted provisions are "terminates" and "terminating." Petitioner argues that "terminates employment" requires voluntary action on the part of the employee in order for the terms of the plan to require that he be placed into Plan A.

Plan A capitalizes "Terminates Employment," which indicates that it is a term defined within the plan. The definitional section of the plan does not define "Terminates Employment." However, it defines "Termination" and "Termination of Employment" to mean "termination of employment as an employee of Shelby County." (§ 3.01(r)) This definition does not distinguish between an employee who terminates employment voluntarily and one who terminates employment as a result of being discharged.

■ General principles of contract construction are instructive in determining an employee's rights under a pension plan. *Conlee v. Bost Engineering Co.*, 541 S.W.2d 601, 603 (Tenn.App.1976) (quoting 42 A.L.R.2d 461 at 464). This court has stated

that "[t]he cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention." *Park Place Center Enterprises, Inc. v. Park Place Mall Assoc.*, 836 S.W.2d 113, 116 (Tenn.App.1992); *Jaffe v. Bolton*, 817 S.W.2d 19, 25 (Tenn.App.1991).

Had the drafters of the plan intended for these provisions to apply only to those employees who voluntarily left county employment, the drafters surely would have included some provision addressing an employee's status in the retirement system when the employee is discharged or leaves for another reason.

Although the language is phrased somewhat ineptly, we conclude that the drafters of the retirement plan intended "terminates" and "terminating" to mean simply "the end of employment with the county," regardless of the circumstances that caused employment to terminate. We recognize the potential merit in Petitioner's argument, but we cannot reasonably construe the language of either pension plan to require voluntary termination by an employee. Our interpretation of "terminates employment" is that the employee can terminate employment by choosing to do so, or he can terminate employment because he is forced to do so by actions of the county. In either event, the result is the same. Termination means simply the end of employment with the county.

It was the trial court's opinion that a determination that Petitioner's break in service was voluntary was necessary in order to hold that Petitioner was not entitled to Plan B benefits. As explained above, we disagree with the trial court in part because we do not believe that there exists any voluntary-involuntary distinction in the pension plan. Nevertheless, we feel that the trial court reached the correct result. That is, pursuant to the

---

**3.** The Tennessee Supreme Court has expressly validated the Shelby County retirement system's amendments to its pension plan. In *Blackwell v. Quarterly County Court*, 622 S.W.2d 535 (Tenn. 1981), the Court held that changes can be properly made in a county retirement plan as long as the changes do not affect the rights of an employee who has a vested interest in the assets of the retirement plan. *Id.* at 542. In other words, *Blackwell* holds that:

[A] public employer may make changes in such a plan when reasonably required to do so for the fiscal integrity thereof, even though such changes be detrimental to the beneficiaries of the plan, except that, no such modification can be permitted to adversely affect an employee who has complied with all conditions necessary to be eligible for a retirement allowance. *Felts v. Tennessee Consolidated Retirement System*, 650 S.W.2d 371, 374 (Tenn.1983).

explicit terms of the pension plan, Petitioner is entitled to receive only Plan A benefits as his rights did not vest under Plan B.

Accordingly, we affirm the trial court's judgment on a different basis. We hold that there is no requirement that an employee be involuntarily terminated in order for such employee to receive benefits. The plan requires ten years' service with the county in order to acquire a vested right to Plan B benefits. Petitioner simply did not fulfill the ten-year requirement and thus, did not ac-

quire a vested right to Plan B benefits. Costs on appeal are taxed to Petitioner.

CRAWFORD, P.J., W.S., and PAUL G. SUMMERS, Special Judge, concur.