IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON
_____

GERALD WHITE, d//b/a GERALD
WHITE TRUCKING COMPANY,

    Plaintiff-Appellant,

Vs.

AQUARIUS INDUSTRIES, INC.,
d/b/a AQUARIUS-PINNACLE, INC.,
PINNACLE FIBERGLASS, INC. and
PRAXIS INDUSTRIES, INC.,

    Defendants-Appellees.

FROM THE HARDIN COUNTY
CIRCUIT COURT, No. 2243;
THE HONORABLE C. CREED
McGINLEY, JUDGE

C.A. No. 02A01-9605-CV-00129
*AFFIRMED*

Jeffrey Parrish; Reynolds & Reynolds
of Jackson, For Appellant

John Cook and Jennie D. Latta;
Krivcher, Magids, Neal, Cottam &
Campbell, P.C., of Memphis
For Appellee

**FILED**

**June 23, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

MEMORANDUM OPINION[1]
_____

*CRAWFORD, J.*

This appeal arises out of an action to collect a debt. Plaintiff, Gerald White, d/b/a Gerald White Trucking Company (White), appeals from the order granting summary judgment in favor of defendant, Praxis Industries, Inc. (Praxis).

Pinnacle Fiberglass Corporation (Pinnacle) was a Tennessee corporation engaged in the manufacture of fiberglass bathtubs and showers in Savannah, Tennessee. Dr. Lowell F. Stonecipher (Stonecipher) owned 99.13% of the common stock of Pinnacle and was also its president and the sole member of its board of directors. White contracted with Pinnacle to haul its bathtubs and showers to various locations throughout the United States. During 1993 and the first quarter of 1994, Pinnacle experienced financial difficulties. Stonecipher made significant unsecured loans to Pinnacle during this time to help the company meet cash shortfalls. From April of 1994 forward, however, Stonecipher made $865,444.17 in secured

---

[1]Rule 10 (Court of Appeals). <u>Memorandum Opinion</u>. -- (b) The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

loans to Pinnacle that were perfected by financing statements filed with the secretary of state.[2]

On December 7, 1994, Praxis was incorporated with Stonecipher as its sole shareholder and chairman of its board of directors. On December 8, 1994, Stonecipher made demand upon Pinnacle for the repayment of his secured loan. On December 15, 1994, LRS Real Estate Holding, LLC (LRS) was organized by Stonecipher and his two sons, Lowell F. Stonecipher, Jr. and Christopher Scott Stonecipher. On December 30, 1994, Stonecipher, acting as a secured creditor of Pinnacle, sold all of Pinnacle's operating assets to Praxis for a total purchase price of $1,476,271.45. On that same day, Pinnacle executed a quit claim deed conveying all of its real property to LRS and a lease whereby Praxis agreed to pay $15,900.00 per month to LRS to lease the premises formerly owned by Pinnacle. Also on December 30, 1994, LRS executed an assignment of leases and rents in favor of First Bank to more fully secure First Bank for monies it previously loaned Pinnacle and also executed an assignment and transfer of all existing and future accounts receivable of Praxis to Norfolk Funding, Inc. (Norfolk) and Brotherhood Bank & Trust Company (Brotherhood Bank).

On November 9, 1994, White filed a complaint against Aquarius Industries, Inc., d/b/a Aquarius-Pinnacle Inc. (Aquarius), alleging that, despite repeated demands for payment, Aquarius refused to pay $133,920.16 that it owed to White for freight hauling services. On December 15, 1994, White filed an amendment to his complaint adding Pinnacle as a defendant and making all of the allegations in the original complaint applicable to Pinnacle. Pinnacle filed an answer on January 5, 1995 stating that there was no entity known as Aquarius Industries, Inc., d/b/a Aquarius-Pinnacle, but that Pinnacle operates under trade names, including Aquarius Industries and Aquarius-Pinnacle. In its answer, Pinnacle admits that it contracted with White for trucking services, but denies that it is liable to White for any amounts unpaid for those services. On March 2, 1995, White filed a motion to amend the complaint to add Praxis as

---

[2] The original secured loan was in the amount of $450,000.00, and a UCC-1 Financing Statement was filed with the Tennessee Secretary of State on April 14, 1994 evidencing this loan. The secured loan agreements were modified as the cash needs of the company increased. To reflect these modifications, Stonecipher subsequently filed UCC-3 forms amending the description of the collateral and increasing the maximum principal indebtedness to $1,500,000.00.

defendant, which the trial court granted by an order entered that same day.[3]  Praxis filed its

answer denying the allegations of the amendment on May 5, 1995 and filed its motion for

summary judgment on November 28, 1995.  While the motion for summary judgment was

pending, on February 6, 1996, White filed his motion to amend the complaint for a third time.

In this motion, White sought to add LRS, Stonecipher, Norfolk, Brotherhood Bank, and First

Bank as additional defendants.  White also sought to add additional claims, including fraudulent

conveyance claims against Praxis and Stonecipher based on an alter ego theory, a challenge to

the validity of Stonecipher's security interests for loans made after April 7, 1994, and a

fraudulent conveyance claim against LRS based on the transfer of Pinnacle's real property.  On

March 19, 1996, Praxis filed an objection to White's motion to amend the complaint.

The trial court heard arguments on both motions on March 21, 1996.  On April 15, 1996

the trial court entered an order denying White's motion to amend the complaint and an order

granting Praxis's motion for summary judgment.  White appeals the judgment of the trial court.

On appeal, White presents two issues for our review as stated in his brief:

> 1.  Whether the trial court was in error in denying plaintiff's
> motion to amend his complaint.
>
> 2.  Whether the trial court was in error granting Praxis Industries,
> Inc.'s motion for summary judgment because there were genuine
> issues of material fact that should be determined by a finder of
> fact.

In the first issue, White asserts that the trial court erred in denying his motion to amend

the complaint to add additional defendants and additional claims.  Rule 15 of the Tennessee

Rules of Civil Procedure provides in relevant part:

> A party may amend the party's pleadings once as a matter of
> course at any time before a responsive pleading is served . . . the
> party may so amend it at any time within fifteen (15) days after
> [the pleading] is served.  Otherwise a party may amend the
> party's pleadings only by written consent of the adverse party or
> by leave of court; and leave shall be freely given when justice so
> requires.

Tenn. R. Civ. P. 15.01.          After a responsive pleading has been served, the denial of a motion

---

[3]  Pinnacle has since been dissolved and is no longer a functioning corporation.

3

to amend the pleadings lies within the sound discretion of the trial court and will not be reversed absent a showing of an abuse of that discretion. *Hall v. Shelby County Retirement Bd.*, 922 S.W.2d 543, 546 (Tenn. App. 1995)(citing *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn. App. 1979); *Welch v. Thuan*, 882 S.W.2d 792, 793 (Tenn. App. 1994)). There are several considerations a trial judge should evaluate in determining whether to grant or deny a motion to amend. *Id.* Among these factors are an undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Id.* (citing *Merriman*, 599 S.W.2d at 559).

In light of the factors delineated above, we find ample justification for the trial court's denial of White's motion to amend. White had already amended his complaint twice, and by this motion he sought to amend his complaint a third time approximately fifteen months after filing his original complaint. In addition, all of the events that White relies on as "newly discovered" facts occurred on December 30, 1994, approximately two months before he sought to amend the complaint for a second time to add Praxis as a defendant and over a year before the filing of this motion. White was fully aware of all these facts almost a year before he sought to amend the complaint for a third time. The motion was thus untimely, thereby constituting an undue delay in filing. Moreover, because White sought to add several additional claims, a court's allowance of the amendments would unduly prejudice Praxis. Finally, the amendments would be futile because granting them would only prolong the litigation and would not lead to a contrary ultimate result. The trial court did not abuse its discretion in denying the motion to amend. White's argument is without merit.

The next issue is two-fold. White first contends that there is a genuine issue of material fact as to whether the transfer was a fraudulent conveyance made with intent to defraud under T.C.A. § 66-3-308 (1993). Section 66-3-308 provides the following:

> **66-3-308. Conveyances with intent to defraud.** — Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud, either present or future creditors, is fraudulent as to both present and future creditors.

T.C.A. § 66-3-308 (1993 & Supp. 1996). White contends that summary judgment was improper

because there is a dispute as to whether Stonecipher intended to hinder, delay, or defraud creditors when it transferred Pinnacle's assets to Praxis.

Even if there is a dispute as to Stonecipher's intent in entering into this transaction, this dispute is not material. In Tennessee, a conveyance may not be set aside as fraudulent unless prejudice results to the party seeking relief. *Hicks v. Sovran Bank*, 812 S.W.2d 296, 302 (Tenn. App. 1991). The record in this case indicates that, immediately prior to the sale, Pinnacle was subject to liens by secured creditors exceeding the value of its assets.[4] As an unsecured creditor of a fully encumbered corporation, White was not prejudiced by the sale of Pinnacle's assets to Praxis. This issue is without merit.

White also contends that summary judgment was improper on the issue of whether the sale of Pinnacle's assets to Praxis was a violation of Tennessee's Uniform Commercial Code - Bulk Transfers, T.C.A. §§ 47-6-101 *et seq.*:

> **47-6-102. "Bulk Transfer" — Transfers of equipment —Enterprises subject to this chapter — Bulk transfers subject to this chapter. —**
> (1) A "bulk transfer" is any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory (§ 47-9-109) of an enterprise subject to this chapter.
> (2) A transfer of a substantial part of the equipment (§ 47-9-109) of such an enterprise is a bulk transfer if it is made in connection with a bulk transfer of inventory, but not otherwise.
> (3) The enterprises subject to this chapter are all those whose principal business is the sale of merchandise from stock, including those who manufacture what they sell.
> (4) Except as limited by the following section all bulk transfers of goods located within this state are subject to this chapter.

T.C.A. § 47-6-102 (1996).

The transfer in this case was made by a secured creditor, Stonecipher, who is not an enterprise subject to this bulk transfers law because his principal business is not the sale of merchandise from stock. Moreover, even if Pinnacle is deemed to have made the transfer, White did not establish that Pinnacle is an enterprise subject to this chapter. The record indicates that Pinnacle manufactures bathtubs and showers, but that Pinnacle does so only upon receiving an

---

[4] According to the record, Pinnacle's assets were subject to the following secured claims: Briggs Plumbing Products, $232,000.00; State of Tennessee, $211,000.00; GMAC, $18,414.79; National Bank of Commerce, $6,301.50; Internal Revenue Service, $164,056.35; and Lowell F. Stonecipher, $865,444.17.

order from a wholesaler. There is no evidence in the record that Pinnacle's principal business is the sale of merchandise from stock as required under T.C.A. § 47-6-102(3). This issue is also without merit.

We conclude that there is no genuine issue of material fact and that Praxis is entitled to judgment as a matter of law. Thus, the trial court did not err in granting summary judgment in its favor.

Accordingly, the judgment of the trial court is affirmed in all respects. Costs are assessed against appellant for which execution may issue, if necessary.

                                              _____

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____

**ALAN E. HIGHERS, JUDGE**

_____

**HEWITT P. TOMLIN, JR.**
**SENIOR JUDGE**