IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 2005 Session

## MARTHA FLOWERS (HASENMUELLER) v. STEVEN LEE HASENMUELLER

**A Rule 3 Appeal from the Circuit Court for Shelby County**
**No. CT-005056-02     D'Army Bailey, Circuit Judge**

---

**No. W2005-00038-COA-R3-CV - Filed June 7, 2006**

---

This is a contempt action arising out of a divorce. The parties' final decree of divorce incorporated a marital dissolution agreement. The husband filed a petition for civil and criminal contempt against the wife for several alleged violations of the martial dissolution agreement. At the first hearing on the husband's petition, the husband requested leave of court to amend his petition for contempt. Leave to amend was granted, and in light of the amendment, the trial court ordered a two-day continuance of the hearing. When the proceedings were reconvened, the trial court ruled that the wife had committed three violations of the marital dissolution agreement. The trial court awarded the husband $12,000 in attorney's fees for prosecuting the contempt petition. The wife appeals, asserting that the trial court erred in granting the husband leave to amend his petition, finding that the wife violated the terms of the MDA, and in awarding the husband $12,000 in attorney's fees. We affirm the grant of leave to amend the petition and the finding that the wife violated the terms of the MDA. However, the award of attorney's fees is vacated and the cause remanded for reconsideration of this issue.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed in part, Vacated in part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

S. Denise McCrary, Memphis, Tennessee, for Respondent/Appellant Martha Flowers.

Nick Rice, Memphis, Tennessee, for Petitioner/Appellee Steven Hasenmueller.

### OPINION

On September 5, 2002, Plaintiff-Respondent/Appellant Martha Flowers ("Wife") filed a complaint for divorce in the Shelby County Circuit Court against her husband Defendant-Petitioner/Appellee Steven Lee Hasenmueller ("Husband"). The complaint alleged irreconcilable differences and inappropriate marital conduct. In Husband's October 8, 2002 answer, he admitted

the existence of irreconcilable differences, but denied any inappropriate marital conduct. Husband filed a counter-complaint for divorce.

Shortly thereafter, the parties engaged in mediation. Through the mediation, the parties settled on a permanent parenting plan which set Husband's child support obligations at $2,500 per month. The parenting plan was filed with the court on June 27, 2003.

On July 8, 2003, the parties executed a marital dissolution agreement ("MDA"); the agreement was filed with the court on July 14, 2003. Among other things, the MDA provided for the distribution of debts, real property, personalty, investment accounts, and the Husband's business. Additionally, the MDA stated that each party would pay his or her own attorney's fees, except that a party who incurred attorney's fees while successfully enforcing the MDA against a breaching party would be entitled to reasonable attorney's fees and expenses.

A final decree of divorce was entered on July 14, 2003. The final decree adopted and incorporated by reference both the permanent parenting plan and the MDA.

Within a month after the final decree of divorce was entered, Wife filed a motion to alter or amend the judgment. Wife's motion to alter or amend alleged that Husband had withheld from her information regarding an employment promotion and his financial liquidity.

On August 14, 2003, two days after Wife filed her motion to alter or amend, Husband filed a petition for civil and criminal contempt against Wife. Husband's petition asserted, *inter alia*, that Wife (1) failed to comply with the requirement in the MDA that "Wife shall execute and deliver to Husband a quit claim deed transferring her interest in [the parties' 434 South Holmes, Memphis, Tennessee property] to Husband immediately upon entry of the final decree;" (2) failed to comply with the requirement in the MDA that she execute and deliver to Husband an affidavit declaring all income earned and expenses incurred for the year 2002, so that Husband could complete the parties' 2002 federal income tax return; (3) refused to turn over to Husband various items of his personalty that the MDA specified that Husband had the right to retrieve within ten days after entry of the agreement; and, (4) violated the parenting plan by taking the children on an unapproved vacation the day before Husband was scheduled for visitation with them.

Subsequently, on September 9, 2003, Husband filed his response to Wife's motion to alter or amend the judgment. In his response, Husband denied withholding any property or any increase in income from Wife during the mediation, and asserted that the only purchases he had made were those "needed for replacing articles my wife received in the divorce."

On October 8, 2003, the court entered an order denying Wife's motion to alter or amend. The court also entered a consent order setting forth the parties' agreement to participate in counseling.[1]

Nearly one year later, on November 4, 2004, the court held a hearing to address two motions: a motion by Wife's attorney to withdraw as counsel and Wife's motion for a continuance of a hearing on the contempt petition previously set for November 5, 2004. Both motions were based on Wife's attorney's recent surgery. The motion to withdraw was denied, but the trial court continued the matter until November 16, 2004.

At the November 16, 2004 hearing, the trial court heard arguments on Husband's August 14, 2003 contempt petition. Husband argued that Wife violated the MDA by failing to execute the quit claim deed to their real property. However, by the time of the hearing, Wife had delivered the quit claim deed, so Husband sought to recover the attorney's fees and expenses incurred to compel Wife's compliance. During the hearing, Husband requested leave of the court to amend his August 2003 contempt petition. Initially, Wife's attorney objected to the proposed amendment, arguing lack of notice, but later conceded that notice of the Husband's intent to amend the petition was given prior to the November 4 hearing.

Husband was granted leave to amend his petition for civil and criminal contempt and the hearing was continued until November 18, 2004. The trial court ordered Husband's attorney to deliver any documents relating to the new allegations of contempt to Wife's counsel by noon on November 17. Wife's counsel was assured that a further continuance would be granted if the admission of new evidence during the November 18 hearing unfairly prejudiced Wife. After Husband was granted leave to amend, the parties agreed to withdrawal of the charges of criminal contempt from Husband's petition.

Also on November 16, 2004, Husband's attorney filed an affidavit with the trial court detailing his attorney's fees, totaling $12,683.68, plus expenses.

On November 17, 2004, Wife filed a motion to dismiss Husband's August 2003 petition for contempt. In her motion, Wife argued:

> [The petition] should be dismissed as this Court lacks subject matter jurisdiction to execute upon, enforce the provisions of, or impose a finding of contempt for supposed violations by [Wife] of the provisions of a Final Decree of Divorce that did not become a final, appealable judgment until November 7, 2003.
>
> * * *
>
> Rule 62.02 of the Tennessee Rules of Civil Procedure specifically states in pertinent part that "*The execution of or any proceedings to enforce a judgment shall also be*

---

[1] On November 21, 2003, the court reset the matter for a hearing on January 23, 2004. For reasons not apparent in the record, the January 2004 hearing never took place. On June 9, 2004, Wife filed a petition for enforcement and modification of the permanent parenting plan. This was referred to mediation.

*stayed pending and for 30 days after entry of any of the following orders made upon timely motion: . . . (3) granting or denying a motion under Rule 59.04 to alter or amend the judgment.*"

(Emphasis in original). Thus, Wife argued that the final decree of divorce, incorporating the MDA Wife was alleged to have violated, did not become a final judgment until well after Husband filed his petition for contempt against her. Consequently, Wife asked the trial court to dismiss Husband's August 14, 2003 petition for contempt and assess all costs against Husband.

On the same date, November 17, 2004, Husband filed his amended petition for civil contempt. In the petition, Husband alleged that Wife committed several breaches of the MDA. He alleged that Wife: (1) failed to promptly execute and deliver an affidavit declaring all income earned and expenses incurred for the year 2002 so that Husband could prepare the parties' tax return for 2002; (2) refused to sign the 2002 tax return until September 2004; (3) refused to execute the transfer of two investment accounts; (4) took the parties' children on vacation during one of the Husband's scheduled visitation dates and refused to allow Husband to make up that time; (5) refused to execute and deliver a letter to the parties' financial advisor instructing the refund of $425 to Husband; (6) refused and actively prevented Husband from retrieving his personal property from the marital home after the MDA was executed; and, (7) refused to sign the qualified domestic relations order ("QDRO") dividing the parties' retirement accounts. After Husband filed his original contempt petition, Wife complied with some of her obligations under the MDA. Three issues, however, remained contested at the November 18, 2004 hearing. These were Wife's alleged refusal to execute the letter to the financial advisor, her alleged refusal to execute the QDRO, and her alleged refusal to permit Husband to retrieve his personal property from the parties' house.

The trial court heard proof on these allegations at the November 18, 2004 hearing. At the commencement of the hearing, the trial court instructed Wife's attorney to put on her proof first, explaining, "The court has the discretion to order the proof and I'm asking you to go ahead and put on your proof with regard to that." Wife's attorney did not object to the order of proof, but did object to proceeding on the new issues that were disclosed on November 16, 2004. The objection was noted and overruled, and Wife called Husband as the first witness.

Husband first testified about his attempts to retrieve his personal property after the final agreement was reached in mediation on July 8, 2003. The MDA provided that Husband was to retrieve all of his personal items from the marital house within ten days from the entry of the MDA. The personal items were specified in the MDA. On July 10, 2003, Husband sent Wife an email requesting access to additional personal items that he said were mistakenly omitted from the MDA's specific list. The email informed Wife that he would come to the parties' house in order to gather his belongings on July 14, 2003, the day the divorce was to become final. Husband testified that when he arrived at the parties' house with a "truck with some guys," he was unable to access all of the personal property because some of it was locked up in the house when he arrived. Consequently, on July 20, 2003, he sent Wife another email telling her that he planned to return to the house to "get

-4-

the rest of my stuff." On July 21, 2003, Wife responded to Husband's email. The July 21 email from Wife to Husband was authenticated and entered into evidence without objection. It stated:

> Forget getting anything else here until I get the June payments for MLGW[2] & BellSouth—hope we don't have to get lawyers involved just for this little—you've got your life now & hot tub & new stuff & porno web sites to keep you happy—please just leave me alone.

Husband testified that Wife prevented him from picking up the items he detailed in his amended petition for civil contempt and that their only communication regarding his personal property took place via email. Husband said that, eventually, he was permitted to retrieve many of the personal items to which he was initially denied access, but only after Wife was arraigned on criminal contempt charges.

Wife testified in response to Husband's allegations on his personal property. She disputed that Husband arrived to pick up his personal property with a truck, claiming instead that he arrived in a four-door BMW and was unable to fit all of his property in the sedan. As to the second time that Husband arrived to retrieve his property, Wife testified that she was not at the house to let him in because she did not know that he was coming.

Husband also testified about his allegations that Wife violated the provision in the MDA that "Husband shall cause to be drafted and delivered to Wife a Qualified Domestic Relations Order for entry with the court so as to divide these [retirement] accounts, if necessary to effectuate the transfer of these funds in a tax-exempt manner." Husband's allegation that Wife failed to execute the QDRO was part of the amended contempt petition Husband filed on November 17, 2004. At the November 18, 2004 hearing, Husband testified that the QDRO still had not been signed by Wife, even though her execution of the document was required by the MDA. Husband entered into evidence a December 16, 2003 email from Husband to Wife in which he listed the QDRO as an item that Wife needed to complete. Husband also entered into evidence a December 3, 2003 letter from Wife's attorney to Husband's attorney acknowledging receipt of the QDRO.

Once again, Wife testified in response to Husband's allegations. She claimed that she had neither personally received the QDRO from Husband nor had she refused to sign it. Wife admitted that her attorney had received the document, but advised her that "it wasn't signable."

Finally, the trial court heard proof on Husband's allegation that Wife violated the terms of the MDA by refusing to deliver to him a financial advice letter allowing Husband a refund of $425. In pertinent part, the MDA provided that "Wife shall execute and deliver to the parties' financial advisor a letter allowing the financial advisor to refund to Husband the sum of $425." Before calling the first witness on this subject, Wife's attorney stipulated that Wife did not provide the letter to the

---

[2]The Court presumes that "MLGW" refers to Memphis Light, Gas and Water Division, a Memphis-area energy provider.

financial advisor. Husband then testified that, under the MDA, it was Wife's responsibility to compose and deliver a letter to the parties' financial advisor to direct the advisor to refund half of the advisor's yearly fee, $425, to Husband, and that Wife had failed to do so. Wife did not testify in response to this allegation.

At the conclusion of the hearing, Judge D'Army Bailey issued oral findings of fact and conclusions of law from the bench:

> The Court finds that there was a deliberate refusal on the part of [Wife] to comply with the delivery provision with respect to the financial advisor letter. The Court finds that there was a deliberate refusal on the part of [Wife] to execute the QDRO as evidenced by the proof and orders that that QDRO be executed by her within ten days. The Court finds that there was a deliberate refusal by [Wife] . . . to allow [Husband] to recover all of the items of personalty as evidenced by her own e-mail which she indicated on July 21st that he could forget about getting anything else until she got certain payments and by the rest of the proof in the case. Accordingly the Court believes that the contempt petition filed by [Husband] on August 14, 2003 was appropriately and necessarily filed and prosecuted.

After making these findings, the trial court requested the affidavit from Husband's attorney on his attorney's fees. Wife's attorney objected, claiming that the attorney's fee affidavit had not been delivered to him by noon on November 17, 2004, as previously ordered. Consequently, the trial court continued the issue of the attorney's fees until December 8, 2004. In doing so, the trial court cautioned Husband's attorney to carefully delineate the attorney's fees incurred so as to avoid seeking fees "in connection with items that are not a part of this Court's finding this morning." The trial court advised, "you may need to, [Husband's attorney], try to submit in your memorandum a proposal on how you would divide out of these fees a fair allocation as to the three items of non-compliance that the Court has found this morning and let [Wife's attorney's] memorandum also do the same."

The affidavit detailing Husband's attorney's fees was filed with the trial court on November 18, 2004, the day of the hearing. The affidavit set out the fees incurred in prosecuting all of the contempt claims and stated that the total fees and expenses incurred equaled $19,020.99. It was later conceded, however, that this affidavit contained a mathematical error, and that the total of the fees detailed in the affidavit should have been $14,790.99.

On December 8, 2004, the trial court entered its written order on Husband's petition for civil contempt. As a preliminary matter, the trial court denied Wife's November 17, 2004 motion to dismiss. The trial court articulated its factual findings: (1) that Husband withdrew his claims of criminal contempt; (2) that "there was a deliberate refusal on the part of the [Wife] to comply with the delivery provision with respect to the financial advisor letter which was an order of the Court;" (3) that "there was a deliberate refusal on the part of the [Wife] to execute the Qualified Domestic Relations Order, which was an order of the Court;" (4) that "there was a deliberate refusal on the part

-6-

of the [Wife] to allow the [Husband] to recover all of the items of personalty, which was an order of the Court, as evidenced by her own e-mail which she indicated on July 21st that he could forget about getting anything else until she got certain payments and by the rest of the proof in the case;" and, (5) that the contempt petition was "appropriately and necessarily filed and prosecuted." In light of these findings, the trial court ordered Wife to execute the still-unsigned QDRO within ten days, ordered the parties to engage in counseling together, and ordered the parties to brief the issue of Husband's attorney's fees. Finally, the order set a hearing for December 8, 2004, to address the issue of Husband's attorney's fees.

Also on December 8, 2004, Husband's attorney filed with the trial court another affidavit on his attorney's fees, detailing $20,286.68 in attorney's fees and expenses incurred as of December 6, 2004. Contrary to the trial court's prior instruction, the affidavit did not delineate the attorney's fees attributable solely to the issue of noncompliance. In addressing the trial court's prior directive, Husband's pleading accompanying his affidavit of attorney's fees explained why such an allocation was not appropriate:

> ***Hogan v. Yarbro*** [1999 WL 1097983 (Tenn. Ct. App. Oct. 5, 1999)] specifically addresses the situation before the Court. When a Marital Dissolution Agreement contains an enforcement provision which awards expenses and attorney fees incurred to enforce the Marital Dissolution Agreement, being successful in the contempt hearing is not necessary to recoup attorney fees and expenses. The filing of the Petition for Contempt is the legal action taken to enforce all subsequent actions of compliance by the opposing party. Compliance after the filing of the Petition but before the hearing does not negate the action taken to enforce the Marital Dissolution Agreement. The party incurring the expense to gain compliance with the Marital Dissolution Agreement is entitled by contractual agreement of the parties to an award of attorney fees and expenses.

In response, Wife argued that Husband was only entitled to the fees attributable to the three claims upon which Wife was found in contempt.[3]

At the December 8, 2004 hearing on Husband's attorney's fees, it was noted at the outset that Wife had yet to sign the QDRO. After very briefly listening to arguments on the issue, the trial court reiterated its directive from the November hearing that Wife sign the QDRO without further delay. Next, the trial court addressed the question of attorney's fees. Husband's attorney admitted that there was a miscalculation of attorney's fees in the November 18, 2004 affidavit, and asserted that the trial court should therefore consider his December 8, 2004 affidavit as the proper measure of his attorney fees. The trial court expressed some concern about the fact that Wife's attorney did not receive the December 8 affidavit, complete with $6,000 in additional fees, until the morning of the hearing.

---

[3] Wife proffered her own calculation for the appropriate amount of attorney's fees. By her calculations, because there were eighteen claims and only $14,790.90 in total fees, the maximum attorney's fees award on the three successful issues would amount to $2,465.16.

Consequently, the trial court explained, "I'm going to work from the 14,000 plus [November 18, 2004 affidavit amount]." Husband's attorney argued that the December 8 affidavit was a more accurate portrayal of the actual fees incurred; moreover, the December 8 affidavit included additional expenses incurred to procure Wife's compliance with the November 18, 2004 order directing her to sign the QDRO. Despite the trial court's indication that it would utilize the November 18, 2004 amount of $14,790 as the starting amount for the award of attorney's fees, it considered a portion of Husband's attorney fees and expenses incurred after November 18, 2004. The trial court stated that it would include fees for the time spent arguing at the December 8, 2004 hearing. Ultimately, the trial court stated that it would award attorney's fees in the amount of $12,000 to Husband:

> Court:                         . . . And if you take into account the time from then to today at—is it a hundred dollars an hour?
> [Husband's attorney]: 180, Your Honor.
> Court:                         So at the very least, you'd be looking at $15,780, at least $16,000.00. For the reasons I've already stated, I'm going to award an attorney fee of $12,000.00. All right. Thank you, Lawyers.

The trial court issued its final order on the issue of attorney's fees on January 4, 2005, awarding Husband $12,000 in fees. The order set out the bases for this ruling:

> An extreme amount of time and expense has been needed to enforce the terms of the [MDA] as evidenced by the record in this case post divorce and the affidavit of attorney fees of [Husband's attorney]. Some issues initially complained of in the Petition for Contempt were resolved short of final adjudication by the Court, but this resolution occurred subsequent to the filing of the initial contempt petitions. This matter has been an especially contentious dispute with regard to matters that were in the Court's mind reasonably set forth as to the respective obligations of the parties in the [MDA]. The Court notes that even up to the hearing on the reserved issue of attorney fees, [Husband's attorney] has been here as counsel in pursuit of compliance with the very clear orders not only of the [MDA] but also of this Court, namely the signing of the [QDRO] which should have occurred within ten days of the hearing of this matter on November 18, 2004.

On January 6, 2005, two days after the filing of this order, Wife filed her notice of appeal.

On appeal, Wife raises three issues for our consideration. First, Wife argues that the trial court erred by permitting Husband to amend his complaint for contempt during the November 16, 2004 hearing. Second, Wife asserts that the trial court erred by finding that Wife violated the terms of the MDA. Finally, Wife argues that the trial court abused its discretion in awarding Husband attorney's fees in the amount of $12,000.

Husband also appeals. He argues on appeal that the trial court acted properly in awarding him attorney's fees, but contends that the trial court should have awarded $20,286.68 in fees instead of $12,000.

On appeal, the trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). The trial court's conclusions of law are reviewed *de novo*, however, and are not entitled to any presumption of correctness. ***See, e.g., Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993).

In her first argument on appeal, Wife asserts that the trial court erred in permitting Husband to amend his petition for contempt during the November 16, 2004 hearing. Wife argues that, by setting the amended petition for contempt for hearing on November 18, 2004, only two days after the initial hearing was held, the trial court denied Wife her right to due process. Wife maintains that the amendment prejudiced her because "she was unable to adequately reply, unable to prepare, and unable to muster her evidence and witnesses with regards to the new allegations."

On appeal, the review of a trial court's decision on whether to permit a party to amend a pleading is a deferential abuse of discretion standard. ***See Henderson v. Bush Bros. & Co.***, 868 S.W.2d 236, 237-38 (Tenn. 1993); ***Hall v. Shelby County. Ret. Bd.***, 922 S.W.2d 543, 546 (Tenn. Ct. App. 1995). Rule 15.01 of the Tennessee Rules of Civil Procedure provides that leave to amend a party's pleadings "shall be freely given when justice so requires." Tenn. R. Civ. P. 15.01; ***Winn v. Tucker Corp.***, 848 S.W.2d 64, 68 (Tenn. Ct. App. 1992). Consequently, the decision to permit such an amendment is within the sound discretion of the trial court, ***Matus v. Metro. Gov't of Nashville***, 128 S.W.3d 653, 655 (Tenn. Ct. App. 2003), and typically hinges on a number of considerations. ***Hall***, 922 S.W.2d at 546. "Among these factors are undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." ***Id***. (citing ***Merriman v. Smith***, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979)). To prevent injustice, the trial court is permitted to attach conditions to its granting of the amendment. ***See Gardiner v. Word***, 731 S.W.2d 889, 891 (Tenn. 1987); ***Matus***, 128 S.W.3d at 655.

In the instant case, the trial court granted the Husband's motion to amend his petition for contempt during the November 16, 2004 hearing, placing three conditions on permitting the amendment. First, the hearing was continued until November 18, 2004. Second, the parties were required to exchange all documents relating to the contempt issues on November 17, 2004. Lastly, the trial court assured Wife's attorney that a further continuance would be granted if, at any time during the November 18, 2004 hearing, any evidence was presented that would unfairly prejudice Wife. Imposition of these conditions indicates that the trial court contemplated the relevant factors in granting Husband's motion to amend the contempt petition.

Wife argues that resetting the hearing only two days after the original hearing deprived her of the ability to appropriately respond to the charges. Wife argues, "Had the Wife had sufficient time

to prepare, she would have been able to present her evidence as to how she was not in contempt, instead of having the Court cut her off at every turn (see below)." Apart from this conclusory statement, she does not explain how she was unfairly prejudiced by the amendment. Wife, of course, testified multiple times at the hearing and exercised her opportunity to examine and cross-examine Husband throughout the proceedings.

In light of all of these factors, we cannot conclude that the trial court abused its discretion in granting Husband leave to amend the contempt petition. The trial court's decision on this issue is affirmed.

Next, Wife argues that the trial court erred by finding that Wife violated the terms of the MDA. Wife argues that the evidence in the record is insufficient to sustain the court's findings that (1) Wife did not permit Husband to retrieve his personal belongings, (2) Wife refused to deliver to the parties' financial advisor a letter that would allow Husband a refund of $425, and (3) Wife refused to sign the QDRO.

Wife argues first that the trial court erred by finding that Wife did not permit Husband to retrieve his belongings. Based on the testimony at trial, it remains unclear as to how many trips Husband made to retrieve his property. Husband contended that, on at least one trip, he came with a truck and two other men, prepared to take everything, but was prevented from doing so because some of his belongings were locked up. As to one of Husband's trips, Wife did not dispute getting notice that Husband would be coming to get his personal items, but contended that he came with only a car, unprepared to take everything. The trial court apparently credited Husband's version of the events. On appeal, the trial court's determinations of credibility are entitled to great deference. *Bowman v. Bowman*, 836 S.W.2d 563, 567 (Tenn. Ct. App. 1991). Moreover, based on the email Wife sent to Husband, the trial court could, and apparently did, infer that Wife effectively held some of Husband's items hostage, conditioning their return on Husband's payment of certain expenses. Again, the trial court's determinations of credibility are entitled to great deference on appeal. Viewed in its totality, the evidence does not preponderate against the trial court's finding that Wife breached this portion of the MDA by interfering with Husband's right to recover his personal property. Accordingly, this portion of the trial court's ruling is affirmed.

The second alleged violation of the MDA was Wife's refusal to deliver a letter to the parties' financial advisor, which prevented Husband from getting a $425 refund. The trial court specifically found that "there was a deliberate refusal on the part of [Wife] to comply with the delivery provision with respect to the financial advisor letter." On appeal, Wife argues that she was denied an opportunity to put on evidence that it was Husband's duty to provide the letter for Wife to sign. This argument is not borne out by the appellate record. The trial court considered the unambiguous language of the MDA—"Wife shall execute and deliver to the parties' financial advisor a letter allowing the financial advisor to refund to Husband the sum of $425." Moreover, Wife's attorney admitted to the trial court that Wife had not provided the letter to the financial advisor. The evidence clearly preponderates in favor of the trial court's ruling on this issue. Consequently, the trial court's ruling on this issue is affirmed.

Finally, Wife argues that she should never have been held in contempt for failure to execute the QDRO. On appeal, Wife asserts that "she was just waiting for a *valid* QDRO" before signing. At trial, Wife's attorney argued that the QDRO received from Husband was flawed and in need of correction. However, Wife's attorney failed to detail any of the alleged flaws in the QDRO to the trial court, and has failed to do so on appeal as well. The evidence at trial established that Wife received the QDRO and failed to sign it. The evidence does not preponderate against the trial court's finding that Wife willfully failed to execute the QDRO. Consequently, the trial court's ruling on this issue is affirmed.

The final assignment of error that Wife urges on appeal is the trial court's award of $12,000 in attorney's fees to Husband. Wife argues that Husband should have been awarded fees only for his efforts on the three items for which she was found in contempt of court. In contrast, Husband asserts that the trial court erred by not awarding him the full $20,286.68 he sought at the December 8, 2004 hearing.

The allowance of an award of attorney's fees is a matter largely within the sound discretion of the trial court. *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995); *Byrd v. Byrd*, 184 S.W.3d 686, 693 (Tenn. Ct. App. 2005); *Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001). On appeal, this Court will interfere with such an award only when there is an abuse of discretion. *Byrd*, 184 S.W.3d at 693; *Threadgill v. Threadgill*, 740 S.W.2d 419, 426 (Tenn. Ct. App. 1987). This is an especially deferential standard. The appellant bears the burden of demonstrating an abuse of discretion by showing that "the evidence preponderates against the award, and a manifest injustice will be done if the [t]rial [c]ourt's decision is allowed to stand." *Wilder*, 66 S.W.3d at 894 (citing *Long v. Long*, 957 S.W.2d 825 (Tenn. Ct. App. 1997)).

In reviewing the transcript of the December 8, 2004 hearing on attorney's fees, it is apparent that the trial court accepted the November 18, 2004 affidavit from Husband's attorney as an accurate statement of fees incurred up to that date in prosecuting the contempt petition. However, on December 8, 2004, Husband's attorney submitted to the trial court a revised affidavit showing the fees incurred up until December 6, 2004. The monetary difference between the two figures was approximately $6,000. It is undisputed that as of the December 8, 2004 hearing, Wife still had not signed the QDRO.

The December 8, 2004 hearing was held in order to establish the appropriate amount of attorney's fees. In addition, one contempt charge related to the QDRO, remained unresolved. Under these circumstances, it would have been appropriate for the trial court to award fees incurred through the December 8 hearing. In its remarks, the trial court indicated that it would award fees through the December 8 hearing, although it is unclear whether the trial court in fact considered the affidavit of fees submitted at the December 8 hearing. It is equally unclear the extent to which Husband's failure to provide the December 8 affidavit to Wife, prior to the December 8 hearing, affected the trial court's ruling. Ultimately, the trial judge appeared to calculate in his head fees through the December 8 hearing as "at least $16,000.00." The basis for this calculation is not apparent. The trial

judge then reduced that to $12,000, "[f]or the reasons that I already stated. . . ." These reasons, however, are simply not clear in the record.

While the determination of the amount of an attorney's fee need not be done with precision, the record must give an appellate court some basis for review, to ascertain if it is an abuse of discretion. Based on the record before us, we are unable to do so. Therefore, we are left with little choice but to vacate the trial court's award of attorney's fees and remand this issue to the trial court for its determination of the proper amount in a manner which apprises the appellate court of the basis for the award, sufficient to determine if the award was an abuse of discretion.

The decision of the trial court is affirmed in part, vacated in part, and remanded for further proceedings not inconsistent with this Opinion. Costs of this appeal shall be taxed against Appellant Martha Flowers, and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE