IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
FEBRUARY 16, 2005 Session

## CAROL ANN VICK WATSON v. FRANK LEE WATSON, JR.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-01-2398-1     Walter Evans, Chancellor**

_____

**No. W2004-01014-COA-R3-CV - Filed August 9, 2005**

_____

This appeal arises out of an action for divorce. The trial court awarded the wife a divorce from the husband on the ground of inappropriate marital conduct and denied the husband's counterclaim for divorce. After classifying and valuing various items of property in the marital estate, the trial court divided the marital property between the husband and wife. Further, the trial court awarded the wife transitional alimony in the amount of $6,000.00 per month for three years and then $3,000.00 per month for the next three years. Finally, the lower court ordered each party to pay his or her own attorney's fees. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

David E. Caywood, Holly Jackson Renken, Memphis, TN, for Appellant, Carol Ann Vick Watson

Sam B. Blair, Jr., Memphis, TN, for Appellee, Frank Lee Watson, Jr.

### OPINION

### I. Facts and Procedural History

Frank Lee Watson, Jr. ("Husband" or "Appellee") and Carol Ann Vick Watson ("Wife" or "Appellant") were married on November 18, 1978. For Husband, it was his second marriage, and, for Wife, it was her first marriage. Husband has two children of his prior marriage, Nona Elizabeth Watson and Frank Lee Watson, III. Husband and Wife have one child of their marriage, Robert Lee Watson ("Robert"), who lives with Wife, was twenty-three years old at the time of the final divorce decree, and has a learning disability.

At the time of trial, Husband was sixty-three years old and in good health. He attended law school at Tulane University, and, in 1973, Husband moved to Memphis, Tennessee, and began to practice law with the law firm Waring Cox, PLC. Husband continued to work at Waring Cox until 1998, when he moved to the law firm Baker, Donelson, Bearman, Caldwell & Berkowitz, PC. Husband owns 1,000 shares of stock in Baker, Donelson. Additionally, Husband is the chief executive officer of the Randell Corporation, which operates a commodities pool and acts as a commodities trade advisor. Randell Corporation, in turn, owns Randell Commodity Corporation. The primary asset of Randell Commodity Corporation is a piece of farmland in Mississippi ("Randell Ranch"), which was conveyed in 1990 to Randell Commodity Corporation from Husband and Wife.[1] Randell Ranch generates income from sales of hay and timber, as well as permitting use of the land to care for another's cattle.[2] Additionally, Husband and Wife receive income on average of $4,750.00 per month by virtue of their ownership of ten units of Vining Sparks IBG, which are valued at approximately $41,000.00 per unit and are currently pledged to secure an indebtedness of $307,000.00 owed to First Tennessee Bank.

At the time of trial, Wife was fifty-six years old and was found by the trial court to be in good health. Wife testified that she has required surgery, including a hysterectomy and the removal of three polyps. Additionally, Wife testified that she has diverticulosis,[3] which has on one occasion advanced into diverticulitis. Wife has her high school diploma and took courses at the University of Memphis for two years, but does not hold a college degree. In 1981, Wife obtained her securities series 7 and commodities series 3 licenses, respectively allowing Wife to sell stocks and commodities. However, Wife has not been employed as a securities broker since 1985, and her licenses are no longer valid. Since then, she has worked some for Randell Corporation and Randell Ranch and stayed at home to care for the parties' son, Robert, and help him in school.

The parties have separated on two different occasions. The first separation occurred in January 1997 after Wife found out that Husband was involved with another woman. After living apart, the parties eventually reconciled with each other in 1998. The second separation occurred on September 28, 2001, again as a result of Husband's infidelity. Husband began a relationship with another woman named Houston Anderson ("Anderson") in Fall 2001.

As a result, Wife filed her complaint for divorce on November 27, 2001, alleging inappropriate marital conduct and irreconcilable differences as grounds. Husband answered admitting there were irreconcilable differences and denying he had committed inappropriate marital

---

[1] The quitclaim deed states that Wife "joins in this Quitclaim Deed for the purpose of conveying any right, title and/or interest she may have in the property by virtue of her marriage to Frank L. Watson, Jr., which shall include but not be limited to, homestead and elective share rights, if any."

[2] Husband testified that cattle of Sparks Farming are fed, and, in exchange, Randell Ranch received between thirty-five and forty cows.

[3] Diverticulosis is an intestinal disorder.

conduct. Husband counterclaimed alleging inappropriate marital conduct and irreconcilable differences.

While the divorce proceeding was pending and during the parties' separation, Husband and Anderson took several trips together to Florida, Colorado, Montana, Wyoming, Ohio, Texas, Missouri, Washington, D.C., and the U.S. Virgin Islands. Husband has purchased clothing for Anderson at various stores, including Goldsmith's, Gretta Pari, Saks Fifth Avenue, Neiman Marcus, Oak Hall, Joseph's, Casual Corner, and Boston's. Additionally, Husband took Anderson out to dinner at several restaurants, including Felicia Suzanne's, Sleep Out Louie's, the Arcade, Harry's Detour, Madison Grill, Café Samovar, McEwen's, Paulette's, Bryant's, Café Ole, La Tourelle, Grove Grill, Ruth's Chris Steakhouse, Ronnie Grisanti's, Café Society, and Erling Jensen's.

Prior to the hearing beginning in February 2004, counsel for Husband made an oral motion to amend Husband's counterclaim for divorce to add the ground of separation for two years with no minor children. After denying Husband's motion, the trial court heard several witnesses and admitted numerous exhibits into evidence. After the hearing, the trial court awarded Wife a divorce on the basis of Husband's inappropriate marital conduct. The lower court then divided the parties' marital property, awarded Wife transitional alimony in the amount of $6,000.00 per month for the first three years and $3,000.00 per month for the next three years, and ordered each party to pay his or her own attorney's fees. Wife appeals to this Court and Husband has cross-appealed. Both parties present the following issues, as we perceive them, for our review:

I.    Whether the trial court erred when it awarded a divorce to Wife for inappropriate marital conduct by Husband;

II.   Whether the trial court erred when it denied Husband's motion to amend his counterclaim for divorce to add the ground of two-year separation with no minor children;

III.  Whether the trial court erred when it denied Husband's motion to supplement the record on appeal with Wife's subpoenas filed for the hearing below;

IV.   Whether the trial court erred when it admitted Rule 1006 summaries prepared by Wife;

V.    Whether the trial court erred in its division of the parties' marital estate, including:
      a.    Whether the trial court erred in its valuation of the Randell Corporation;
      b.    Whether the trial court erred in its valuation of the ten Vining Sparks IBG units;
      c.    Whether the trial court erred when it determined that Husband's Federal Express stock and Proffitt's/Saks stock no longer existed for division; and
      d.    Whether the trial court erred when it determined that Husband's expenditures for the benefit of Anderson would not be considered as dissipation in the division of the marital estate;

VI.   Whether the trial court erred in the amount and duration of the transitional alimony award; and

VII.     Whether the trial court erred when it decided each party shall be responsible for his or her own attorney's fees.

For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## II.  Standard of Review

We are mindful that

> [A] trial court may, once a ground for divorce has been stipulated or proven, award a divorce to the party less at fault or simply declare the parties to be divorced.  The choice is left to the discretion of the court.  We will not reverse a trial court's decision as to which party is entitled to a divorce unless the trial court has abused its discretion.

*Crowell v. Crowell*, No E1999-00348-COA-R3-CV, 2000 Tenn. App. LEXIS 370, at *28 (Tenn. Ct. App. May 30, 2000) (citing *Hull v. Hull*, No. 01A01-9403-CV-00139, 1994 Tenn. App. LEXIS 659 (Tenn. Ct. App. Nov. 18, 1994)).  We further note that "[i]n Tennessee, after a responsive pleading has been served, the denial of a motion to amend the pleadings lies within the sound discretion of the trial court.  It will not be reversed absent a showing of an abuse of that discretion."  *Hall v. Shelby County Retirement Bd.*, 922 S.W.2d 543, 546 (Tenn. Ct. App. 1995) (citing *Welch v. Thuan*, 882 S.W.2d 792, 793 (Tenn. Ct. App. 1994); *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979)).

Further, we note that, in general, admission of evidence is entrusted to the sound discretion of the trial court, and its rulings will be disturbed on appeal only upon a clear showing of an abuse of discretion.  *State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004) (citing *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997)); *see also Norman v. Norman*, No. M2001-01281-COA-R3-CV, 2003 Tenn. App. LEXIS 125, at *5-9 (Tenn. Ct. App. Feb. 18, 2003) (holding that a trial court did not abuse its discretion when it considered and relied upon Rule 1006 summaries prepared by one party's counsel).

Our review of a trial court's division of marital property is *de novo* upon the record, affording a presumption of correctness to the trial court's findings of fact.  Tenn. R. App. P. 13(d); *Dellinger v. Dellinger*, 958 S.W.2d 778, 780 (Tenn. Ct. App. 1997) (citing *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Dalton v. Dalton*, 858 S.W.2d 324, 327 (Tenn. Ct. App. 1993)).  Trial courts are given wide discretion by appellate courts with respect to the manner in which they divide marital assets, and, therefore, marital property divisions are given great weight by this Court on appeal. *Dellinger*, 958 S.W.2d at 780 (citing *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994); *Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn. Ct. App. 1987)).

Because the amount and duration of alimony awards are affected by the court's findings of fact in consideration of the factors contained in Tenn. Code Ann. § 36-5-101(d)(1), *Vaughn v. Vaughn*, No. E2000-02281-COA-R3-CV, 2001 Tenn. App. LEXIS 572 at \*4 (Tenn. Ct. App. Aug. 7, 2001) (citing *Siegel v. Siegel*, No. 02A01-9708-CH-00198, 1999 Tenn. App. LEXIS 139 (Tenn. Ct. App. Mar. 5, 1999)), we afford trial courts broad discretion regarding the amount and duration of an alimony award. *Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994) (citing *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993); *Jones v. Jones*, 784 S.W.2d 349, 352 (Tenn. Ct. App. 1989)). Thus, this Court must affirm an alimony award absent an abuse of discretion. *Vaughn*, 2001 Tenn. App. LEXIS 572, at \*4 (citing *Siegel*, 1999 Tenn. App. LEXIS 139 (citing *Hanover v. Hanover*, 775 S.W.2d 612 (Tenn. Ct. App. 1989))). Additionally, an award of attorney's fees is within the trial court's discretion, and this Court will not interfere with such an award absent a clear showing of an abuse of discretion. *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995) (citing *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992); *Crouch v. Crouch*, 385 S.W.2d 288, 293 (Tenn. Ct. App. 1964)).

## III. Award of Divorce to Wife

Husband argues that the trial court erred when it awarded a divorce to Wife rather than to him. Specifically, though Husband admits he had an extramarital relationship with Anderson, he argues that the trial court should have awarded him a divorce based upon Wife's alleged inappropriate marital conduct. Section 36-4-101 of the Tennessee Code states:

The following are causes of divorce from the bonds of matrimony:

. . . .

(11) The husband or wife is guilty of such cruel and inhuman treatment or conduct towards the spouse as renders cohabitation unsafe and improper which may also be referred to in pleadings as inappropriate marital conduct . . . .

Tenn. Code Ann. § 36-4-101(11) (2001). When a ground for divorce has been stipulated or proven, the trial court may award a divorce to a party less at fault or declare the parties divorced; such choice is left to the trial court's discretion. Tenn. Code Ann. § 36-4-129(b) (2001); *see also Crowell v. Crowell*, No. E1999-00348-COA-R3-CV, 2000 Tenn. App. LEXIS 370, at \*28 (Tenn. Ct. App. May 30, 2000).

This Court has previously addressed the relationship infidelity has to the ground of inappropriate marital conduct:

It is clear that proof of an adulterous relationship will support a divorce on the ground of inappropriate marital conduct, also referred to in the statute, T.C.A. § 36-4-102(a)(1), as cruel and inhuman treatment:

> Cruel and inhuman treatment has been defined in various ways and in numerous cases. Further definition is unnecessary. Suffice it to say we cannot conceive of any stronger case of cruel and inhuman treatment than a persistent pattern of adulterous conduct. Nor may it be excused on the basis of a spouse not having contemporaneous knowledge of its occurrence. The hurt, the humiliation, the shame, the wounded pride, the rejection are the same whether the knowledge comes before, during or after the fact. Adultery is rarely perpetrated openly and in the daylight. By its very nature its commission is normally not discovered until the act has been consummated. No man, set upon a pattern of adulterous conduct, willingly furnishes proof of his own turpitude.
>
> We hold that there was ample evidence of cruel and inhuman treatment in this case. We further hold that proof of adultery is admissible in a divorce action charging cruel and inhuman treatment and may form the basis for a decree resting upon cruel and inhuman treatment.
>
> * * *
>
> We find nothing in reason, logic or precedent which would, or should, preclude a trial judge from granting a divorce on the grounds of cruel and inhuman treatment when the evidence establishes adultery, so long as the parties are fully apprised in advance of the nature of the proof. Indeed, a decent regard for posterity suggests that divorces, except as a last resort, should not be bottomed on adultery.

*Farrar v. Farrar*, 553 S.W.2d 741, 744 (Tenn. 1977) (Henry, J.).

*Corbett v. Corbett*, No. 03A01-9601-CH-00008, 1996 Tenn. App. LEXIS 525, at *4-5 (Tenn. Ct. App. Aug. 26, 1996).  Husband argues that Wife's threats of having their son, Robert, declared incompetent constituted inappropriate marital conduct such that he, rather than Wife, should have been granted a divorce.  Given that Husband admitted an adulterous relationship with Anderson and such conduct clearly constitutes inappropriate marital conduct, we cannot say, after reviewing the record, that the trial court abused its discretion when it awarded Wife, rather than Husband, a divorce from the bonds of matrimony.

## IV.  Amending the Counterclaim

-6-

Husband argues that the trial court erred when it refused to allow Husband to amend his counterclaim for divorce by adding the ground of two-year separation with no minor children[4] upon his oral motion at the commencement of trial. Rule 15.01 of the Tennessee Rules of Civil Procedure provides, in pertinent part, as follows:

> A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been set for trial, the party may so amend it at any time within 15 days after it is served. Otherwise a party may amend the party's pleadings only by written consent of the adverse party *or by leave of court*; and leave shall be freely given when justice so requires.

Tenn. R. Civ. P. 15.01 (2004) (emphasis added). Given that Wife filed an answer to Husband's original counterclaim for divorce in August 2003, Husband could only amend his counterclaim for divorce pursuant to either Wife's consent or by leave of court. At no point did Wife give her consent for Husband to amend his counterclaim for divorce adding the ground of two-year separation with no minor children; therefore, Husband argues that the trial court erred when it did not grant him leave to amend his counterclaim. As noted above, the denial of a motion to amend the pleadings lies within the sound discretion of the trial court and will not be reversed unless the trial court has abused its discretion. *Hall v. Shelby County Retirement Bd.*, 922 S.W.2d 543, 546 (Tenn. Ct. App. 1995) (citing *Welch v. Thuan*, 882 S.W.2d 792, 793 (Tenn. Ct. App. 1994); *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979)).

This Court has previously addressed the factors a trial court should analyze when deciding whether to grant or deny a motion to amend: "[a]mong these factors are undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Id.* (citing *Merriman*, 599 S.W.2d at 559). In this case, Husband's counsel moved to amend Husband's counterclaim to add this ground on the eve of trial in February 2004 when Husband could have moved to add the ground at any point after September 28, 2003, two years after the parties separated. The original complaint for divorce by Wife was filed on November 27, 2001. Further, given that this Court finds no error in the trial court's award of a divorce to Wife on the ground of inappropriate marital conduct, the amendment of a no-fault ground for divorce would be futile as it would not lead to a contrary result. Therefore, we hold that the trial court did not abuse its discretion when it denied Husband's motion to amend his counterclaim for divorce.

---

[4] Specifically, section 36-4-101(15) of the Tennessee Code provides the following ground for divorce:

For a continuous period of two (2) or more years which commenced prior to or after April 18, 1985, both parties have lived in separate residences, have not cohabited as man and wife during such period, and there are no minor children of the parties.

Tenn. Code Ann. § 36-4-101(15) (2001).

## V. Supplementing the Record on Appeal

Next, Husband argues the trial court erred when it denied his motion to supplement the record on appeal with the subpoenas Wife filed in the court below. Husband argues that such filings would establish Wife's litigious nature during the divorce proceedings. Rule 24(a) of the Tennessee Rules of Appellate Procedure describes the content of the record on appeal:

> (a) Content of the Record. – The record on appeal shall consist of: (1) copies, certified by the clerk of the trial court, of all papers filed in the trial court except as hereafter provided; (2) the original of any exhibits filed in the trial court; (3) the transcript or statement of the evidence or proceedings, which shall clearly indicate and identify any exhibits offered in evidence and whether received or rejected; (4) any requests for instructions submitted to the trial judge for consideration, whether expressly acted upon or not; and (5) any other matter designated by a party and properly includable in the record as provided in subdivision (g) of this rule.
>
> *The following papers filed in the trial court are excluded from the record: (1) subpoenas or summonses for any witness or for any defendant when there is an appearance for such defendant*; (2) all papers relating to discovery, including depositions, interrogatories and answers thereto, reports of physical or mental examinations, requests to admit, and all notices, motions or orders relating thereto; (3) any list from which jurors are selected; and (4) trial briefs; and (5) minutes of opening and closing of court. Any paper relating to discovery and offered in evidence for any purpose shall be clearly identified and treated as an exhibit. No paper need be included in the record more than once.

Tenn. R. App. P. 24(a) (2004) (emphasis added). Therefore, the subpoenas for the witnesses appearing at trial are not within the contemplated scope of the record on appeal. Further, if the purpose of the subpoenas is to demonstrate Wife's litigious nature in the divorce proceedings, we find no reversible error of the trial court's denial to supplement the record with these subpoenas, given that the trial transcript is quite voluminous and Wife has incurred over $100,000.00 in attorney's fees as a result of the proceedings. *See* Tenn. R. App. P. 36(b) (2004).

## VI. Rule 1006 Summaries

Next, Husband contends that the trial court erred when it admitted summaries of Husband's expenses, Anderson's deposits and withdrawals for her checking account, payments made by Husband to the Randell Corporation, and Husband's deposits into his checking account, prepared by Wife. As noted above, admission of evidence is entrusted to the sound discretion of the trial court, and its rulings will be disturbed on appeal only upon a clear showing of an abuse of discretion. *State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004) (citing *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997)); *see also Norman v. Norman*, No. M2001-01281-COA-R3-CV, 2003 Tenn. App. LEXIS 125, at *5-9 (Tenn. Ct. App. Feb. 18, 2003) (holding that a trial court did not abuse its

discretion when it considered and relied upon Rule 1006 summaries prepared by one party's counsel).

Rule 1006 of the Tennessee Rules of Evidence provides the following:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary or calculation. The originals or duplicates shall be made available for examination or copying, or both, by other parties at reasonable times and places. The court may order that they be produced in court.

Tenn. R. Evid. 1006 (2004). In this case, Wife created summaries of the subjects stated above and provided copies of checks, bank statements, and credit card statements from which she culled the information.[5]

First, Husband contends that the writings being summarized, i.e. copies of his checks, bank statements, and his credit card statements, are not so voluminous such that summaries are appropriate. Husband argues that, because the documents could be easily produced in court, summaries are inappropriate. We disagree. In this case, the summaries analyzed hundreds of pages of information. As such, we cannot say that the trial court abused its discretion on this basis.

Next, Husband argues that the summaries should have been excluded from evidence because they were false, inaccurate, or misleading. When a summary is incomplete or inaccurate, it may result in exclusion as irrelevant. *See* Cohen, Neil, *Tennessee Law of Evidence*, § 10.06[6] (4th ed. 2000). Wife testified that, whenever she was unsure what an item, whether a deposit or expense, was for, she would list the item as "miscellaneous." Wife admitted that a large portion of her summaries consisted of "miscellaneous" items. However, there appears to be no dispute that the amounts of the expenses, checks, and deposits in the summaries are accurate. Additionally, there appears to be no dispute that the dates of the expenses, checks, and deposits in the summaries are also accurate. Finally, Husband does not dispute the account names and numbers for the deposits nor does he dispute the names of the places at which he expended monies, all listed in the summaries. After our review of these summaries, these exhibits appear accurate insofar as these details are concerned, and, therefore, we cannot say that the trial court abused its discretion when it admitted these summaries.[6]

## VII. Marital Property Division

---

[5] The copies of the checks, bank statements, and credit card statements were also admitted into evidence along with the summaries provided by Wife. It does not appear that Husband contests the admission of these items. Therefore, we do not address the admissibility of the original documents.

[6] We would also note that, because these summaries have been admitted, they are not necessarily conclusive. *State ex rel. Stewart v. Follis*, 205 S.W. 444, 446 (Tenn. 1917). The summaries are "simply competent, and may be tested by the original evidence, the books, papers, etc., on which the experts may be cross-examined." *Id*. The trial court in this case permitted Husband to cross-examine Wife with respect to the conclusions drawn by the summaries.

Next, the parties argue that the trial court erred in its marital property division. Tennessee Code Annotated § 36-4-121(c) enumerates what a trial court must consider when equitably dividing marital property:

(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
(6) The value of the separate property of each party;
(7) The estate of each party at the time of the marriage;
(8) The economic circumstances of each party at the time the division of property is to become effective;
(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
(10) The amount of social security benefits available to each spouse; and
(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (2003). The parties argue over various issues with respect to the marital property division. We address each one in turn.

### A. Valuation of the Randell Corporation

First, Wife argues that the trial court erred when it assigned a value of -$119,111.00 to the Randell Corporation. She also argues, in the alternative, that if the value is correct, Husband should be credited with a debt Randell Corporation owes him. In response, Husband contends that section 27-1-113 of the Tennessee Code prevents this Court from disturbing the valuation of the Randell Corporation. That section of the Code provides as follows:

In all cases tried on the facts in a chancery court and afterwards brought for review to the court of appeals, the court of appeals shall, to the extent that the facts are not stipulated or are not concluded by the findings of the jury, make and file written findings of fact, which thereupon shall become a part of the record. Before any such findings shall become final, reasonable opportunity shall be afforded the parties to examine the findings and to ask for different or additional findings. *Where there has*

*been a concurrent finding of the master and chancellor, which under the principles now obtaining is binding on the appellate courts, the court of appeals shall not have the right to disturb such finding.* To the extent that the findings of the chancery court and the court of appeals concur, they shall, if there be any evidence to support them, be conclusive upon any review of the facts in the supreme court; to the extent that they do not concur, they shall be open to examination in that court. The court of appeals shall not be limited to the consideration of such facts as were found or requested in the lower court, but it shall independently consider and find all material facts in the record; and either party, whether appellant or not, may assign error on the failure of the chancellor to find any material fact, without regard to whether such fact was found or requested in the lower court. This shall not apply to any case tried in the chancery court upon oral testimony.

Tenn. Code Ann. § 27-1-113 (2000) (emphasis added).  We are also mindful that trial courts have wide latitude in determining the value of the marital estate; this discretion extends to choosing the method for valuation of a closely held corporation.  *Irvine v. Irvine*, No. 03A01-9304-CH-00168, 1993 Tenn. App. LEXIS 693, at *6-7 (Tenn. Ct. App. Nov. 3, 1993) (citing *Fisher v. Fisher*, 648 S.W.2d 244 (Tenn. 1983); *Wallace v. Wallace*, 733 S.W.2d 102 (Tenn. Ct. App. 1987)).  Several methods have been recognized by this Court, including (1) the market value method, (2) the asset value method, and (3) the earnings value or capitalization of earnings method.  *Powell v. Powell*, 124 S.W.3d 100, 104 (Tenn. Ct. App. 2003) (citing *Blasingame v. Am. Materials Inc.*, 654 S.W.2d 659, 666 (Tenn. 1983)).  The special master utilized the asset value approach to value the Randell Corporation.

Given that the special master was appointed and assigned the Randell Corporation a value of -$119,111.00, Husband argues that this Court is precluded from disturbing the concurrent finding of the trial court with regard to this valuation.  However, in this case, the special master made it clear in her testimony and in her report that this valuation was dependent upon recognizing a loan made by Husband to the Randell Corporation.  The amount of this loan at the time of trial was $419,481.23, and the special master's testimony and report states that, if the court should adopt the -$119,111.00 for the Randell Corporation, it must also recognize a corresponding receivable asset to Husband in this amount.  If the trial court did not recognize the loan as a receivable asset for Husband, the special master stated that the loan should not be recognized as a corporate liability in calculating the value of the Randell Corporation.  In listing the assets of Husband and Wife when it divided the marital estate, the trial court makes no mention of the loan owed to Husband by the Randell Corporation in the amount of $419,481.23 as a receivable asset for Husband.  Because it appears the trial court did not recognize this loan owed to Husband by the Randell Corporation, the trial court has not made a "concurrent finding" such that this Court may not disturb the valuation of the Randell Corporation.  Therefore, section 27-1-113 of the Tennessee Code cannot be applied to this finding by the trial court.  After reviewing the record as a whole and the report of the special master, we hold that the evidence preponderates against a valuation of the Randell Corporation at -$119,111.00 without recognizing a receivable asset for Husband in the amount of $419,481.23.

Therefore, we remand this case to the trial court for an equitable division of the parties' marital estate in accordance with this opinion.

## B. Valuation of the Vining Sparks IBG Stock

Next, Wife argues that the trial court erred in its valuation of the equity of the Vining Sparks IBG stock held as marital property. Husband and Wife, as part of their marital estate, own ten units of Vining Sparks IBG, a private securities company. Each unit was valued at approximately $41,000.00 per unit at the time of trial. However, the ten units are encumbered by a debt of approximately $307,000.00 owed to First Tennessee Bank. This leaves an equity of approximately $103,000.00 in the Vining Sparks IBG units.

The trial court awarded Wife $38,500.00 in alimony *in solido*, intending this award to represent half the net value of the ten Vining Sparks IBG units. As a result, the trial court awarded the ten units to Husband and placed a lien of $38,500.00 owed to Wife on the ten units. It appears the trial court, in valuing the Vining Sparks IBG units, deducted the cost of taxes on a sale of the Vining Sparks IBG units in valuing the units.[7] The trial court made this deduction despite testimony from Husband that, if awarded the ten units, he did not intend to sell them and would borrow the money to pay Wife's equitable portion of the units.

This Court has previously held that transfer costs and fees are not proper deductions when the record contains no evidence that a party intends to sell an asset; unless the trial court contemplates the sale of property as part of the division of the marital estate, the value of the property should be based on its present value without deducting costs that might be incurred if the property were sold. *Waits v. Waits*, No. 01-A-01-9207-CV-00288, 1993 Tenn. App. LEXIS 173, at *9-10 (Tenn. Ct. App. Feb. 26, 1993) (citing *Beavers v. Beavers*, 675 S.W.2d 296, 299 (Tex. App. 1984); *In re Marriage of Berg*, 737 P.2d 680, 683 (Wash. Ct. App. 1987)); *see also Walker v. Walker*, No. 01-A-01-9001-CH-00029, 1990 Tenn. App. LEXIS 440, at *14 (Tenn. Ct. App. June 27, 1990) (holding that a trial court did not err in refusing to consider the tax consequences to each party in accordance with Tenn. Code Ann. § 36-4-121(c)(9) when there was no showing of the necessity or intention of selling any of the assets of the parties). In this case, Husband testified that, if awarded the ten units of Vining Sparks IBG and ordered to pay Wife half of the equity of the units, he would borrow money to do so and did not intend to sell the ten units. (TE vol. 6, p. 724). Therefore, we hold that the trial court erred when it deducted the tax consequences of a sale of the ten Vining Sparks IBG units when there is no evidence in the record of an intention or a necessity of selling the units. We remand this issue to the trial court for a proper valuation of the Vining Sparks IBG units and an equitable division between the parties in accordance with this opinion.

---

[7] Though the trial court does not explicitly state in its final order that it has deducted the cost of taxes in valuing the Vining Sparks IBG units, Husband testified that the implied taxes on the sale of the Vining Sparks IBG units would be approximately $30,000.00 and that if Wife were awarded half of the equity, her sum would be approximately $37,500.00.

### C. Existence of the Federal Express and Proffitt's/Saks Stock

Wife contends that the trial court erred when it found that the Federal Express stock and the Proffitt's/Saks stock were no longer in existence for division and distribution. This Court has previously stated as follows:

> [P]roperty once owned by a spouse, either as separate property or marital property, but not owned by either spouse at the time of divorce, is not subject to classification and division or distribution when the divorce is pronounced. This is because, generally speaking, a court cannot divide and/or distribute what is "not there" – property no longer owned by the parties, individually or jointly, at the time of the divorce.

*Brock v. Brock*, 941 S.W.2d 896, 900 (Tenn. Ct. App. 1996) (footnote omitted).

Although Husband's financial statements of November 2001 and April 2003 reflect a loan of 40,000 shares of Federal Express stock and 130,000 shares of Proffitt's/Saks stock to the Randell Corporation, we cannot say that the evidence preponderates against the finding that the stock was sold by the Randell Corporation and no longer exists for classification, division, and distribution. Husband's Rule 14(B) Affidavit does list the loan of the stock to the Randell Corporation but also states that the stock was sold to pay trading losses and operating expenses. Marty Morgan, Husband's legal secretary until August 2002, stated that Husband loaned these stocks to the Randell Corporation. (TE vol. 5, p. 392, 419). Further, Husband testified that the stock was loaned to the Randell Corporation in the 1980's and 1990's and sold shortly after it was loaned. Though Husband testified that the loans were made several years prior to the divorce proceedings, Husband was able to produce one of the stock loan agreements dated January 25, 1991, between Husband and the Randell Corporation, memorializing a loan of 40,000 shares of the Proffitt's/Saks stock. As such, we affirm the trial court's finding that the Federal Express stock and the Proffitt's/Saks stock were sold and did not exist for classification, division, and distribution at the time of the divorce.

### D. Dissipation of Marital Assets

Wife also argues that the trial court erred when it failed to consider Husband's dissipation of marital assets when it divided the marital estate. Section 36-4-121(c)(5) of the Tennessee Code states that, when dividing the marital estate, the trial court shall consider all relevant factors including "[t]he contribution of each party to the acquisition, preservation, appreciation, depreciation or *dissipation* of the marital or separate property." Tenn. Code Ann. § 36-4-121(c)(5) (2003) (emphasis added). As this Court has previously noted, the burden of showing a dissipation of marital assets falls on the party alleging dissipation:

In general, we note:

The burden of persuasion and the initial burden of production in showing dissipation is on the party making the allegation, and that party retains throughout the burden of persuading the court that funds have been dissipated, but after that party establishes a prima facie case that moneys have been dissipated, the burden shifts to the party who spent the money to produce evidence sufficient to show that the expenditures were appropriate.

24 Am. Jur. 2d *Divorce and Separation* § 560 (1998) (citation omitted). Therefore, the trial court did not err when it determined that the Appellee, who was the party alleging dissipation of marital assets, had the burden of showing such dissipation.

*Wiltse v. Wiltse*, No. W2002-03132-COA-R3-CV, 2004 Tenn. App. LEXIS 546, at *13-14 (Tenn. Ct. App. Aug. 24, 2004). This Court has also articulated an analysis for courts to follow when deciding whether a party to a divorce has dissipated marital assets:

The court notes dissipation is not defined in the statute. In such circumstances, courts must look to the plain language of the statute and apply the ordinary meaning of the words. *Cohen v. Cohen*, 937 S.W.2d 823, 827 (Tenn. Ct. App. 1996). "Dissipate" is defined "to destroy or waste, as to expend funds foolishly." Black's Law Dictionary 473 (6th ed. 1990). This Court finds instructive an article by Lee R. Russ examining how courts around the country have dealt with the difficult task of making the fine-line distinction between dissipation and discretionary spending. *See* Lee R. Russ, Annotation, Spouse's Dissipation of Marital Assets Prior to Divorce as a Factor in Divorce Court's Determination of Property Division, 41 A.L.R. 4th 416 (1985). Trial courts must distinguish between what marital expenditures are wasteful and self-serving and those which may be ill-advised but not so far removed from "normal" expenditures occurring previously within the marital relationship to render them destructive.

In determining whether dissipation occurred, we find trial courts should consider the following: (1) whether the evidence presented at trial supports the alleged purpose of the various expenditures, and if so, (2) whether the alleged purpose equates to dissipation under the circumstances. *Id*. at 420-421. The first prong is an objective test. To satisfy this test, the dissipating spouse can bring forward evidence, such as receipts, vouchers, claims, or other similar evidence that independently support the purpose as alleged. The second prong requires the court to make an equitable determination based upon a number of factors. Those factors include: (1) the typicality of the expenditure to this marriage; (2) the benefactor of the expenditure, namely, whether it primarily benefited the marriage or primarily benefited the sole dissipating spouse; (3) the proximity of the expenditure to the breakdown of the marital relationship; (4) the amount of the expenditure. *Id*. at 421.

-14-

*Ward v. Ward*, No. W2001-01078-COA-R3-CV, 2002 Tenn. App. LEXIS 902, at *9-10 (Tenn. Ct. App. Dec. 19, 2002).

The trial court, during its ruling from the bench, stated as follows:

> The goal of the trial judge is to divide marital property in essentially an equitable manner. An equitable division is not necessarily an equal one. Marital property may be divided without regard to fault. However, one factor to be considered is a party's dissipation of marital property.
>
> Any marital funds which Mr. Watson may have expended for or on behalf of his paramour, Ms. Houston Anderson, *will not have any bearing on property distribution because during the same period Mrs. Watson received from Mr. Watson funds greatly in excess of said expenditures, which she used for her own benefit without accounting to Mr. Watson for same.*

The trial court made a similar statement in its written findings of fact and conclusions of law which it incorporated into the final decree of divorce.[8] In its written findings of fact and conclusions of law, the trial court cites to no law to support the proposition that dissipation of marital assets will not be considered if the dissipating spouse provides support in excess of the alleged amount of dissipated assets. Likewise, this Court is unable to find any proposition in Tennessee jurisprudence to support such a ruling.

As noted above, Husband and Anderson admitted taking several trips together to Florida, Colorado, Montana, Wyoming, Ohio, Texas, Missouri, Washington, D.C., and the U.S. Virgin Islands. Husband admitted purchasing clothing for Anderson at several stores, including Goldsmith's, Gretta Pari, Saks Fifth Avenue, Neiman Marcus, Oak Hall, Joseph's, Casual Corner, and Boston's. Husband also admitted taking Anderson out to eat at several restaurants, including Felicia Suzanne's, Sleep Out Louie's, the Arcade, Harry's Detour, Madison Grill, Café Samovar, McEwen's, Paulette's, Bryant's, Café Ole, La Tourelle, Grove Grill, Ruth's Chris Steakhouse, Ronnie Grisanti's, Café Society, and Erling Jensen's. Though Husband may have paid Wife support in excess of these expenditures, that fact alone does not mean that any dissipation of marital assets

---

[8]      Specifically, the trial court stated "[t]his Court further finds that the Defendant husband continued to provide meaningful and substantial financial support to his wife during the period of their separation, far in excess of any marital funds he may have []'dissipated' or expended for or on behalf of his paramour, Ms. Anderson." The trial court also stated in its written findings of fact and conclusions of law as follows:

> Any marital funds which Mr. Watson may have expended for or on behalf of his paramour, Ms. Houston Anderson, will not be considered by this court as having any bearing on the property distribution, because during the same period, Mrs. Watson received from Mr. Watson funds, greatly in excess of said expenditures, which she used for her own benefit without accounting to Mr. Watson for same.

by Husband should not be considered when the trial court divides the marital estate. Therefore, we remand this issue to the trial court to engage in a *Ward* analysis of these expenditures by Husband.

## VIII.  Alimony and Attorney's Fees

Both parties argue that the trial court erred in the amount and duration of transitional alimony awarded to Wife. The trial court awarded Wife transitional alimony in the amount of $6,000.00 per month for three years and then $3,000.00 per month for the next three years. Section 36-5-101(d)(1)(E) of the Tennessee Code states as follows:

> (E)  In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
>
>> (i)  The relative earning capacity, obligations, needs, and financial resources of each party including income from pension, profit sharing or retirement plans and all other sources;
>>
>> (ii)  The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
>>
>> (iii)  The duration of the marriage;
>>
>> (iv)  The age and mental condition of each party;
>>
>> (v)  The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
>>
>> (vi)  The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
>>
>> (vii)   The separate assets of each party, both real and personal, tangible and intangible;
>>
>> (viii)  *The provisions made with regard to the marital property as defined in § 36-4-121*;

(ix)  The standard of living of the parties established during the marriage;

(x)  The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(xi)  The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(xii)  Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1)(E) (2003) (emphasis added).  Of these factors, the need of the obligee spouse and the obligor spouse's ability to pay are the most important.  *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998) (citing *Varley v. Varley*, 934 S.W.2d 659, 668 (Tenn. Ct. App. 1996); *Crain v. Crain*, 925 S.W.2d 232, 234 (Tenn. Ct. App. 1996)).  In addition, spousal support awards should not be punitive.  *Anderton*, 988 S.W.2d at 682 (citing *Duncan v. Duncan*, 686 S.W.2d 568, 571 (Tenn. Ct. App. 1984); *McClung v. McClung*, 198 S.W.2d 820, 822 (Tenn. Ct. App. 1946)).  However, because we are remanding this case for a reevaluation of several issues that could affect the marital property division, we decline to address the issue of Wife's alimony award and remand this issue to the trial court for a revised alimony award, if necessary, that considers the relevant factors of section 36-5-101(d)(1)(E) of the Tennessee Code.  *Flannary v. Flannary*, 121 S.W.3d 647, 651-52 (Tenn. 2003); *see also Schuett v. Schuett*, No. W2003-00337-COA-R3-CV, 2004 Tenn. App. LEXIS 193, at *17 (Tenn. Ct. App. Mar. 31, 2004).

Additionally, Wife contends the trial court erred when it refused to award her any of her attorney's fees.  An award of attorney's fees in a divorce is considered a form of spousal support, characterized as alimony *in solido*.  *Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001) (citing *Sannella v. Sannella*, 993 S.W.2d 73, 76 (Tenn. Ct. App. 1999); *Anderton*, 988 S.W.2d at 682; *Smith v. Smith*, 984 S.W.2d 606 (Tenn. Ct. App. 1997); *Gilliam v. Gilliam*, 776 S.W.2d 81 (Tenn. Ct. App. 1988)).  As a result, a trial court must consider the factors enumerated in Tenn. Code Ann. § 36-5-101(d)(1)(E), with the most important factors being the need of the economically disadvantaged spouse and the ability of the obligor spouse to pay.  *Id*. (citing *Anderton*, 988 S.W.2d at 683; *Cranford v. Cranford*, 772 S.W.2d 48 (Tenn. Ct. App. 1989)).  Again, because, like an award of alimony, an award of attorney's fees requires a consideration of the marital property division, we remand this issue to the trial court to determine whether an award of attorney's fees is appropriate.  *Schuett*, 2004 Tenn. App. LEXIS 193, at *18-19.

## IX.  Conclusion

For the reasons stated above, we affirm the trial court's award of a divorce to Appellant, affirm the trial court's denial of Appellee's motion to amend his counterclaim for divorce, affirm the trial court's denial of Appellee's motion to supplement the record on appeal, affirm the trial court's admission of Appellant's Rule 1006 summaries, reverse the trial court's valuation of the Randell Corporation and remand for a consideration of the receivable asset of Appellee in accordance with the special master's report, reverse the trial court's valuation of the Vining Sparks IBG stock and remand for a new valuation of the stock in accord with this opinion, affirm the trial court's finding that the Federal Express stock and Proffitt's/Saks stock no longer exist for classification, division, and distribution, reverse the trial court's determination that any dissipation of assets by Appellee should not be considered and remand for an analysis of Appellee's expenditures in accordance with *Ward v. Ward*, and remand the issues concerning alimony and attorney's fees. Costs of this appeal are taxed equally to Appellant, Carol Ann Vick Watson, and her surety, and Appellee, Frank Lee Watson, Jr., for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE